### HINES v. UNITED STATES.

#### No. 2504.

Circuit Court of Appeals, Tenth Circuit.

Nov. 9, 1942.

Rehearing Denied Dec. 9, 1942.

Isaac Mellman, of Denver, Colo., for appellant.

Everett M. Grantham, U. S. Atty., of Santa Fe, N. M., for appellee.

Before BRATTON, HUXMAN, and MURRAH, Circuit Judges.

MURRAH, Circuit Judge.

L. M. Hines, herein called appellant, appeals from a conviction and sentence on counts one and four of an indictment containing seven counts (the remaining counts were dismissed), charging the use of the mails to defraud in violation of Section 215 of the Criminal Code, 18 U.S.C.A. § 338. Count one charges in substance that the appellant and one A. H. Palmer devised a continuing scheme and artifice to defraud Edwin Dice, Katherine C. Ratcliffe, Walter N. Wentz, George M. Beckett, Sarah E. Byrne, Louise A. Rosenbusch, Mrs. Archie Milton, and other persons including the public generally. As a part of the said scheme and artifice to defraud, it is alleged that the appellant and

A. H. Palmer represented to the parties named, and others, that the appellant was the owner of an oil refinery in Denver, Colorado, and represented the Kutz Canon Oil and Gas Company, and that Palmer was Frank Worden, Commissioner of Public Lands of the State of New Mexico, and as such connected with and represented the State Land Office. That valuable oil lands owned by the State of New Mexico, and under the supervision of the Commissioner of Public Lands, were subject to lease by those who had previously purchased oil and gas leases in the state; that because of Palmer's connection with the State Land Office, they could purchase the same much cheaper than from any other person; that the leases offered for sale by the appellant and Palmer were located near oil and gas production, and large oil companies were desirous of purchasing the said leases. That some of the said leases offered for sale by the appellant and Palmer were underlaid with gas peculiarly adapted to the production of carbon dioxide or "dry ice", and that the said gas was further adapted to the production of aviation gasoline which was in great demand for use by the United States government; that the said leases would be productive in the immediate future; that major oil companies would repurchase the leases at a large profit, and in addition to the sale price received by the parties to be defrauded, they would receive monthly payments as royalty from the major companies when the leases were developed, all of which were knowingly false and fraudulent and intended to deceive and defraud the named parties.

It is further alleged that the continuing scheme to defraud contemplated the use of the United States mails in the transmittal of the leases from lease brokers in Santa Fe, New Mexico, and the said Land Office, to the purchasers of the same (the parties to be defrauded), and by them transmitted to the Land Office at Sante Fe, for approval and recordation, and returned to the purchasers. And it is specifically alleged that on the 19th day of August, 1940, the defendants caused to be placed in the United States Post Office at Santa Fe, New Mexico, to be delivered through the United States mails, to Katherine C. Ratcliffe, Washington, D. C., a purported oil and gas lease, and that the said lease was delivered by mail to the said Katherine C. Ratcliffe in furtherance of the fraudulent scheme.

Count four of the indictment adopts the fraudulent allegations contained in count one in connection with the same continuing scheme to defraud and the use of the mails in furtherance thereof; and further charges that on the 6th day of July, 1940, at Santa Fe, the defendants caused to be placed in the United States Post Office at Santa Fe an oil and gas lease which had been sold to W. W. Wentz, and which was delivered to the said Wentz in Westminster, Maryland, through the use of the United States mails.

Upon motion of the defendant Palmer, the trial court granted a bill of particulars, a part of which is incorporated in the record. So much thereof as appears upon the record relates to transactions between the appellant, Palmer and Wentz, one of the parties alleged to have been defrauded; and transactions between the appellant, Palmer and Katherine C. Ratcliffe, another party alleged to have been defrauded. The bill particularizes the transactions between the defendants and witnesses Ratcliffe and Wentz, making specific reference to certain paragraphs in count one of the indictment alleging the scheme to defraud. At the commencement of the trial of the defendants named in the indictment, Palmer entered a plea of guilty to the first count of the indictment in the presence of the jury panel, but before a jury had been qualified to try the cause, and count four of the indictment was dismissed as to him. Upon a trial of the case, numerous witnesses were called who testified concerning the representations made by the appellant and the defendant Palmer which induced them to purchase oil and gas leases on public lands in New Mexico, and who also testified that the said leases were received by them through the United States mails. The transactions concerning witnesses other than Ratcliffe and Wentz are not particularized by that part of the bill of particulars appearing before us, and the appellant complains that since that part of the bill of particulars appearing in the record did not relate to the transactions with any parties other than Wentz and Ratcliffe, the government is bound by the proof as delimited by the bill of particulars touching the transactions with Ratcliffe and Wentz, and that the evidence concerning the transactions with these two witnesses is insufficient to support a scheme to defraud or the use of the mails as an essential part of it.

We are not favored with the entire bill of particulars, only so much thereof as pertains to the witnesses Wentz and Ratcliffe is set out in the record. We are therefore unable to determine whether that part of the bill of particulars not incorporated in the record sufficiently particularizes the transactions between the appellant and other witnesses who testified concerning the fraudulent representations as alleged in the indictment. We will not assume that the testimony introduced, and on which the verdict is partly based, was not sufficiently covered by the bill of particulars when the entire bill is not before us. Before the appellant can rely upon the bill of particulars to delimit the allegations in the indictment, he must first show that such evidence was limited and excluded by the bill of particulars, and he cannot do so by incorporating only that part of the bill of particulars which best serves his purpose. The record does not reflect that the appellant here requested a bill of particulars, or that he raised any objection to the testimony of the witnesses, or expressed any surprise at the testimony introduced in support of the allegations in the indictment, and he cannot now complain of the introduction of this evidence.

It is sufficient to say that the evidence on the record amply supports the allegations in count one in the indictment to the effect that the appellant and Palmer devised a continuing scheme to defraud the parties named therein, and that by false and fraudulent representations made to them they were induced to purchase oil and gas leases on public lands in New Mexico greatly in excess of their actual value; that the representations so made were known to be false at the time they were made, and that the appellant and the defendant Palmer contemplated that the mails should be used in furtherance of the scheme to defraud. Moreover, it is shown by the record that the mails were used in the transmittal of the leases from brokers in Santa Fe, New Mexico, and from the Public Land Office to purchasers of the leases, and by the purchasers returned by mail to the Public Land Office for approval and recordation. Specifically it is shown that after appellant sold the witness Ratcliffe an oil and gas lease which had not been delivered, the defendant Palmer promised to send Ratcliffe a "deed" for the lease after the purchase price had been paid. The pur-

ported assignment of the oil and gas lease, or the so-called "deed", was delivered to the witness Ratcliffe. She testified that she received it through the United States mails and the envelope bearing the postmark was introduced in evidence. This is entirely sufficient without more to show that the mails were intended to be used as a part of the fraud, and that they were so used.

In support of count four of the indictment, it is shown that the witness Wentz was induced by false and fraudulent pretenses to purchase an oil and gas lease on public lands in New Mexico from the appellant who, at the time of the transaction, introduced the defendant Palmer as Mr. Worden, Commissioner of Public Lands of the State of New Mexico. Specifically it is shown that the lease which Wentz purchased from the appellant was delivered to him through the United States mails as intended, and the envelope in which it was transmitted bearing the postmark was introduced in evidence.

■ The verdict does not rest upon the testimony of these two witnesses alone. Numerous other similar transactions are shown tending to establish the existence of a scheme to defraud as laid in the indictment and the use of the mails in its execution. The appellant contends that the mailing shown by the record was not in furtherance of the alleged scheme, and that such mailing does not fulfill the requirements of the statute, citing Mitchell v. United States, 10 Cir., 118 F.2d 653, and the cases cited therein. But here the indictment alleges a continuing scheme and the use of the mails as a part thereof. We think the case clearly comes within the rule announced in Mitchell v. United States, 10 Cir., 126 F.2d 550. Here the fraud as laid in the indictment included the use of the mails as an essential part of it, and was not fully consummated until after the mails had been used.

■ The appellant also complains of the plea of guilty entered by co-defendant Palmer in the presence of the jury panel from which he was tried, and of the remarks of the court in his instructions to the jury commenting on the fact that Palmer had entered a plea of guilty. The entry of a plea of guilty by a co-defendant in the presence of a jury is no evidence of the guilt or innocence of another defendant, and it cannot be assumed that a prospective juror would be influenced by the entry of a plea of a co-defendant in the absence of some evidence tending to show such influence. Here the trial court in his instructions to the jury referred to the guilty plea of the co-defendant Palmer, specifically admonishing the jury that the plea of Palmer should have no effect one way or the other of the guilt or innocence of the defendant Hines, and that the question for the jury to determine was whether Hines was guilty or not guilty as charged in counts one and four of the indictment; that they were not to "speculate" on the reason for the failure of Palmer to go to trial, and that their verdict should be based on the evidence in the case submitted to them under the indictment. It is clear that any possible prejudice which could have arisen by reason of the plea of Palmer in the presence of the prospective jurors was completely erased from their minds by the instructions of the court. The court did not err by his reference to the plea, but on the contrary admonished them of their duty as jurors, and it must be presumed that they followed the instructions of the court in arriving at a verdict. See Kelling v. United States, 8 Cir., 121 F.2d 428; United States v. Falcone, 2 Cir., 109 F.2d 579; Grandbouche v. People, 104 Colo. 175, 89 P.2d 577; 23 C.J.S., Criminal Law, page 296, § 969.

■ It is next contended that the term of the verdict submitted to the jury was prejudicial because the jury was required to write in the word "not" before the word "guilty" in a space provided for that purpose in the event they found the defendant not guilty in any count of the indictment. The court no doubt adequately instructed the jury concerning the guilt or inocence of the appellant. It cannot be presumed that a jury of twelve men, competently instructed concerning the standards by which they shall determine the guilt or innocence of one charged with an offense, would return a verdict of guilty because they did not possess sufficient intelligence to clearly indicate their verdict by failure to write the word "not" in the space provided immediately preceding the word "guilty". We hold that there was no error in the form of the verdict.

■ Finally it is contended that this court erred in its refusal to remand the case to the district court to permit the appellant to file a motion for a new trial, based on newly discovered evidence. The matter was heard by this court pursuant

to a motion, and affidavits and exhibits were submitted in support thereof. This motion received the consideration of this court and was duly denied. We have again considered the question in the light of the record presented here and we are now convinced that this court did not abuse its discretion by refusal to remand the case and permit the appellant to interpose a motion for a new trial because of newly discovered evidence. It would serve no useful purpose for us to review the evidence on which the appellant relies, or would rely upon a motion for a new trial if a new trial were granted. It is sufficient to say that the evidence in our judgment could not materially affect the result, and no error can be predicated thereon.

The judgment is affirmed.